(Consolidated)

STATE OF LOUISIANA v. THE CREDIT CLEARING HOUSE

STATE OF LOUISIANA v. NEW ORLEANS CREDIT MEN'S ASSN.

(January 21, 1929. Opinion and Decree.)

E. M. Heath, of New Orleans, attorney for plaintiff, appellant.

St. Clair Adams and Jos. Dinkelspiel, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. These cases were consolidated for convenience of disposition, since they involve similar facts and are controlled by the same principles of law.

The facts in the suit against the Credit Clearing House are typical of both cases; there the defendant was sued for additional license for the year 1923, under Section 13 of Act 233 of 1920, and under Section 12 of Act 205 of 1924, for the year 1925. Both statutes contain provisions, which, so far as they affect this case, are identical. We quote from the Act of 1924.

"That for every omnibus, regular coach, herdic business, collecting agency or agent for the collection of moneys, accounts, notes, etc., and for every business of transporting money, merchandise or other articles by express or transfer, or operating one or more towboats or tugboats, or keeping a warehouse or storage room or landing where goods and merchandise are received and delivered, the license shall be based on the gross annual receipts of said business, and shall be fixed and graded, as follows, to-wit: * * *."

Without going into too much detail, we will say, that, if defendants are liable at all, they are responsible for the full amount sued for. Their liability depends upon the meaning of the phrase "gross annual receipts" as used in the quoted section.

Both defendants are collecting agencies. The State contends that the licenses must be calculated upon the total sum collected by defendants, including their customers' money, while the defense insists that only the gross commission or earnings can be taxed under the statute. It can be readily seen that there is considerable difference in the result to be obtained by these two methods, in the case of the Credit Clearing House, for example, more than $900.00 in one year's license tax.

The learned judge, a quo, in deciding the case in favor of the defendant tax payer, was much impressed with the equity of defendant's position. We quote from his reasons for judgment:

"Throughout the act it is seen that charges are fixed on what the license debtor owns or receives for himself, his premiums, the price of his goods, and the like, and on his capital. To impose a tax on this defendant on moneys which do not belong to it, which after deduction of its commission it must at once deliver to its clients, would make a distinction between collecting agencies and other license tax payers which is wholly arbitrary and capricious. The thought that the legislature intended such partiality and injustice is revolting."

"It seems to the court that the 'receipts' to which Section 12 of Act 205 of 1924, under which this rule is brought, refers, included only such funds as the defendant receives for its own account. Under that construction of the law the defendant has paid all the license that it owes, and the rule should be discharged."

Defendants strenuously deny that the

Act will bear the interpretation put upon it by the State and invoke the doctrine of contemporaneous construction, supporting its contention, in this regard, with letters from the Supervisor of Public Accounts and the City Attorney of New Orleans, citting State vs. Comptoir National D'Escompte de Paris, 51 Ann. 1272, as authority for the admissibility of the letters, which were objected to by opposing counsel.

In their able brief and in argument, counsel for the State direct our attention to the fact, that courts have no concern with the wisdom or severity of a statute once its meaning is determined.

Lewis' Southerland Statu. Const. 2nd Ed. Vol. 2, p. 697:

"The wisdom of a statute is not a judicial question nor can the courts correct what they may deem excesses or omissions in legislation, or relieve against occasionally harsh operation of statutory provisions without danger of doing more mischief than good."

It is insisted that the meaning of the law is plain; that the adjective "gross" as applied to receipts, means all receipts, not only receipts which remain in the hands of defendant, as commissions, citing Century Dictionary, definition of the word "gross."

"Gross—Whole; entire; total, specifically without deduction as for charged or waste material; without allowance for tare and tret; opposed to net; as, the gross sum or amount; gross profit, income or weight."

To deduct the sums coming to the customers of defendant, before computing the license tax, it is argued, would be to substitute the words "gross profit" or "gross commissions," for the words of the statute "gross receipts."

"When the language of an act is plain and direct, the court will not read into it a word which the law making authority did not see proper to insert."

International Text Book Co. vs. Fitzpatrick, 133 La. 102, 62 So. 490.

We do not altogether share the indignation of our learned brother below, who considers the construction of the law, contended for by plaintiff revolting. If the Legislature should see fit to measure the license tax to be paid by collection agencies by the gross annual amount of collections, and the tax, as thus measured, was not disproportionate to other taxes, as levied by the Act, on other occupations, which counsel insists the Legislature has done in this instance, we would not consider it extraordinary, but simply as a method of computing the tax, which the Legislature, in its wisdom and discretion saw fit to adopt. Some such method obtains, with reference to wholesale dealers who are required to pay a tax measured by gross annual sales, which represent the value of the merchandise sold, as well as the gross profits, or gross earnings. In fact, the cost of the merchandise sold, must compose by far the greater part of the volume of the proceeds of the sales.

It is obvious that there is a marked difference between a tax measured upon gross receipts and one measured upon gross commissions, or gross profits.

In the case of U. S. Glue Co. vs. Town of Oak Creek, 247 U. S. 321, the Court, in considering the effect upon interstate commerce, of a tax measured by net receipts or gross profits, said:

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts

affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between the profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large."

However that may be, we do not feel at liberty to consider the meaning of the phrase "gross annual receipts" as an original proposition, since our Supreme Court has construed the phrase in a case, which we think, sufficiently analogous to the case at bar, to be controlling here. We refer to Hughes, Sheriff and Tax Collector, vs. Commercial Security Co., 163 La. 44, 111 So. 490, where the Court, in discussing the tax due by the defendant, under the omnibus clause of the license law said:

"The case depends upon the meaning of the term 'gross annual receipts' used as a basis for classifying or grading the license tax * * *. The question is whether 'gross annual receipts' means gross annual earnings of interest and discount or gross annual proceeds of all stocks, bonds and notes sold and resold by the Company."

The conclusion reached by the Court was that the phrase in question as applied to the defendant's business meant "gross annual earnings, or revenues from the business."

It is true, as counsel points out, that the Court was dealing with the omnibus clause of the license act, which follows the Twenty-fifth Section of Act 205 of 1924, which reads as follows:

"Any other business, not provided for in this Act, and not otherwise provided for by separate laws, except manufacturing shall be graded the same as above set forth and shall be licensed as fixed in this Section."

In the preceding section the enumerated occupations, though required to pay on gross annual receipts, are in effect taxed upon their gross annual earnings, because it happens that their gross receipts and their gross annual earnings are the same, but this is a distinction without a difference, and we cannot follow counsel in the refinement of argument indulged in, in the effort to differentiate that case from the instant cases. We believe that the principle in the Hughes case is controlling here, consequently the judgments appealed from in both cases are affirmed.